**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )     No. 23 CR 50020 |
| v. | )     Judge Iain D. Johnston |
| | ) |
| MARK CARROLL and LUKE CURRY. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants Mark Carroll and Luke Curry are each indicted on scheming to defraud borrowers and investors of over $3.2 million, *see* 18 U.S.C. § 1343. In advance of trial, both sides have filed multiple motions in limine, and the government has filed a *Santiago* proffer to admit statements of coconspirators, as well as a motion to admit evidence of Defendants' other bad acts under Federal Rule of Evidence 404(b). The motions are now fully briefed. To begin, the Court notes that Mr. Curry filed motions to join in the motions in limine that Mr. Carroll filed [132], and to join in Mr. Carroll's responses to the government's motion [142]. Those motions are granted. The Court now addresses each of the remaining motions in turn.

**Government's *Santiago* Proffer and Motion to Admit Out-of-Court Statements [125]**

The government seeks a pretrial ruling conditionally admitting as non-hearsay the statements of co-conspirators. *See* Fed. R. Evid. 801(d)(2)(E); *see also United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). Under *Santiago*, the government may obtain a conditional ruling that statements of co-conspirators are admissible non-hearsay under Rule 801(d)(2)(E) by making a preliminary showing by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant and the declarant were members of it, and (3) the proffered statements were made during the course of and in furtherance of the conspiracy. *See United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016). Despite Rule 801(d)(2)(E)'s use of the word "coconspirator," statements of joint venturers to a scheme are also covered by the rule, even in cases where conspiracy has not been charged. *United States v. Reynolds*, 919 F.2d 435, 439 (7th Cir. 1990) ("Although the existence of a conspiracy allows the prosecution to use co-conspirator statements that would otherwise be hearsay, it is not necessary to charge a conspiracy in order to take advantage of Fed. R. Evid. 801(d)(2)(E); it is enough to show that a criminal venture existed and that statements took place during and in furtherance of that scheme."). The government need not identify the precise statements it anticipates offering. *See United States v. McClellan*, 165 F.3d 535, 553-54 (7th Cir. 1999); *see also United States v. Shah*, No. 19 CR 864, 2023 U.S. Dist. LEXIS 241, at *5 (N.D. Ill. Jan. 3, 2023) ("The appendix does not include every statement that the government seeks to admit under Rule 801(d)(2)(E), nor does it have to," citing *McClellan*). The preliminary admission is conditional to the government establishing by the close of its case that the statements are admissible. *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir. 1999). If the government fails "the defendant can move for a mistrial or to have the statements stricken." *Id.*

The government's *Santiago* proffer sets out Defendants' alleged scheme to obtain funds from victims through the use of fraudulent representations and false promises. It also identifies three co-schemers, Leslie Wright, Samuel Carroll, Daniel Oliver, as well as a non-exhaustive selection of statements by Defendants and co-schemers the government contends were made in furtherance of the conspiracy.

In response, Defendants do not dispute that for purposes of the *Santiago* proffer, the government has preliminarily established by a preponderance of the evidence that a conspiracy existed, Defendants and co-schemers were members, and the proffered statements by them were made in furtherance of the conspiracy. Carroll Response [137] at 1. Accordingly, the government's motion to admit the proffered and similar statements by Defendants and co-schemers [125] is granted.

However, Defendants do not agree to the admission of statements set out in the government's *Santiago* proffer that were made by others who were not involved in the alleged scheme, or were made by co-schemers to FBI agents which would not have been made in furtherance of the scheme. The government's motion does not specifically seek the admission of any such statements. It does argue that "[v]arious statements made during the course of a conspiracy are also admissible under evidentiary rules other than Rule 801(d)(2)(E)," but just sets out black letter law on the admissibility of a defendant's own statements, or statements not offered for their truth, without identifying specific statements or explaining why a particular statement would be admissible under the rules. Without more, the Court cannot at this time determine the admissibility of these unspecified statements.

**Government's Fed. R. Evid. 404(b) Motion to Admit Other Bad Acts [124]**

In this motion, the government seeks to admit evidence of numerous transactions in which victims deposited money into accounts controlled by Defendants, who then allegedly in violation of Defendants' agreements with the alleged victims withdrew the money for improper purposes, such as to pay other victims or to cover personal expenses. In support, it contends that the transactions are relevant and, as direct evidence of Defendants' crimes, do not fall within Federal Rule of Evidence 404(b)'s prohibition on propensity evidence, citing *United States v. Bradford*, 905 F.3d 497, 506 (7th Cir. 2018).

In response, Defendants are unopposed to the government's motion to admit the proffered evidence, except for the following three transactions:

- Judith Dempsey's deposit of $50,000 on October 19, 2020;
- Dianna Cassell and Jarrett Ensley's deposit on June 26, 2020; and
- Alan Barnett's $42,000 deposit on July 1, 2020.

Carroll's Response [138] at 1. Defendants argue the government has not established the relevance of those three transactions because, unlike the other victims identified in the motion, these four persons are never identified in the indictment or motion, and so there is no basis upon which to determine whether Defendants' receipts of those funds was improper. The Court agrees that without more it cannot determine whether evidence of those transactions is relevant and falls

outside Rule 404(b)'s prohibition of propensity evidence. For other victims, the government has identified evidence that Defendants offered them lines of credits or entered into loan agreements based on fraudulent representations and false promises, and misused the funds the victims deposited. In contrast, for Dempsey, Cassell, Ensley, and Barnett, it never identifies what if any agreements they entered into with Defendants, or explain how their deposits of money relate to any improper conduct by Defendants. Without more, the Court cannot at this time determine the admissibility of these transactions. Before admitting such evidence at trial, the government must raise the issue with the Court and opposing counsel outside the presence of jurors.

Accordingly, the government's motion to admit Rule 404(b) evidence [124] is granted except as to the three transactions discussed above, which the government must raise with the Court and opposing counsel outside the presence of jurors before attempting to introduce.

One final note. Defendants argue that the government should be barred from admitting any other bad acts evidence not identified in its motion. But Defendants have cited no authority under which a party is barred from using evidence at trial if it did not first seek preliminary admission of the evidence in a motion in limine. Perhaps Defendants are referring to the requirement under Rule 404(b)(3) that the government "provide reasonable notice of any such evidence . . . in writing before trial." But Rule 404(b)(3) does not require notice be given in a motion in limine. The Court will not at this time bar the government from presenting any Rule 404(b) evidence not identified in its motion, but expects the government to comply with the notice requirements of Rule 404(b)(3) by giving reasonable written notice before trial.

**Government's Consolidated Motions in Limine [123]**

The Court now turns to the parties' motions in limine. District courts have broad discretion under their inherent authority to manage trials by ruling on motions in limine. A motion in limine should be granted only if evidence is either clearly admissible or inadmissible on all possible grounds. *See Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011). As mentioned earlier, the rulings are based on anticipated testimony and evidence, the rulings are subject to change. *See Luce*, 469 U.S. at 41-42. With that in mind, the Court begins with the government's motions in limine.

1. **Motion to Bar Defendants from Introducing Their Own Out-Of-Court Statements**

In its first motion in limine, the government seeks an order precluding Defendants from introducing evidence of their own out-of-court statements. The government notes that although Federal Rule of Evidence 801(d)(2) allows it to introduce Defendants' prior statements as statements of a party opponent, any attempt by Defendants to introduce their own prior statements would be inadmissible as hearsay.

Defendants are unopposed except they argue that if the government introduces portions of their prior statements, under Federal Rule of Evidence 106's rule of completeness they should be allowed to submit other portions "which out in fairness to be considered contemporaneously with it" to provide context to avoid misleading jurors.

The government has not identified the specific prior statements it seeks to admit, and so neither Defendants nor the Court can at this point determine whether any other portions of those statements need to be admitted for context. Accordingly, for now the government's motion is denied because there is a conceivable proper purpose for such statements. However, before Defendants attempt to use their own prior statements, including under Rule 106's rule of completeness, they must first alert the Court and opposing counsel outside the presence of jurors.

### 2. Motion to Bar Argument or References to Missing Witnesses

Next, the government seeks to bar Defendants from offering any "argument concerning missing witnesses not under the control of either side." Govt. Motions in Limine [123] at 4. Defendants are mostly unopposed, but note that the government has not yet provided its witness list and so they can respond only in the abstract.

The government's motion is granted. However, if Defendants believe future developments warrant any argument about the government's failure to produce a witness, they must first raise the issue with the Court and opposing counsel outside the presence of jurors.

### 3. Motion to Bar Argument or Evidence Designed to Elicit Jury Nullification

The government sees to bar any argument or evidence designed to elicit jury nullification, such as evidence about the punishment Defendants face if convicted, the government's motivation for investigating and prosecuting them, or accusations of outrageous government conduct. Defendants are unopposed. The motion is granted.

### 4. Motion to Bar Commentary About Discovery

In this motion, the government sees to bar any discussion in front of jurors about discovery requests or disputes. Defendants are unopposed. The motion is granted.

### 5. Motion to Bar Argument Designed to Blame the Victim

The government seeks to bar Defendants from offering evidence or argument that the alleged victims were negligent for not conducting adequate due diligence, for not asking more questions, for not understanding the agreements they entered into, or not realizing that the returns Defendants promised were so outrageous that fraud must be involved. Govt. Motions in Limine [123] at 10. The government contends that such evidence and argument would run afoul of Federal Rule of Evidence 401 because under Seventh Circuit precedent, "'the perpetrator of a fraud may not defend himself by blaming the victim for being duped,'" quoting *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007), and under Federal Rule of Evidence 403 because such irrelevant evidence could mislead jurors.

In *Serfling*, the district court excluded expert testimony proffered by a defendant that a reasonable investigation by the victim would have prevented it from making a $12 million loan to the defendants. *See Serfling*, 504 F.3d at 679. On appeal, that defendant argued that the

district court's exclusion of the proffered evidence prejudiced him. The Seventh Circuit rejected the argument as being foreclosed by precedent, including *United States v. Coffman*, 94 F.3d 330 (7th Cir. 1996), in which the Seventh Circuit held that the wire fraud statute protects victims regardless of their level of sophistication, *id.* at 333-34.[1]

In response to the government's motion in limine, Defendants state that they do not intend to introduce evidence or cross-examine witnesses about the victims' alleged negligence, and agree that the relevant point is Defendants' knowledge and intent. But Defendants contend the government's motion goes too far because it would bar "background information of the case that helps the jury understand the facts and also to [Defendants'] knowledge and intent." Carroll Response [136] at 4. For example, they contend that, if granted, the government's motion would bar them from questioning the alleged victims about what inquiries they undertook before entering into agreements with Defendants, what the alleged victims understood the agreements and their terms to mean, as well as what Defendants understood the agreements and their terms to mean. The Court does not read the government's motion as seeking to bar what the alleged victims or Defendants thought the agreements and their terms meant. As for what inquiries the alleged victims undertook before entering into those agreements, Defendants fail to explain the relevance of the inquiries, and the only relevance the Court can discern is the implication that had the alleged victims made reasonable inquiries, they would not have been duped, the very reason such evidence is disallowed. *See Serfling*, 504 F.3d at 679 ("the perpetrator of a fraud may not defend himself by blaming the victim for being duped").

Defendants contend that the government's motion would also bar them from introducing evidence that the rates of return they offered the alleged victims were unreasonably huge, which they contend is evidence they did not intend to defraud anyone, but rather were "just as clueless as" the alleged victims. Again, the Court does not read the government's motion to seek to bar evidence of promises of high rates of return, or Defendants' intent behind offering such high rates. But evidence or argument offered to establish that the alleged victims should not have been duped by Defendants' promises of high rates of return would be barred.

With those understandings, the government's motion to bar Defendants' from introducing evidence or argument about inquiries the alleged victims undertook before entering into agreements with Defendants, or the alleged victims' thoughts on Defendants' promise of high rates of return, is granted. Those are only the examples provided by Defendants. The government seeks to bar *all* evidence or argument blaming victims, but without specifics about what this additional evidence would consists of, the Court can provide only the general guidance offered by this order.

---

[1] Defendants attempt to distinguish *Coffman* by noting that the decision addresses sufficiency of the evidence, not admissibility of evidence. In *Coffman*, defendants cold-called former retail brokerage firm Smith Barney seeking a $300,000 loan, for which they offered Smith Barney a $100,000 fee. *See Coffman*, 94 F.3d at 332. Smith Barney quickly realized the defendants' claims that they were worth millions, as were stocks they wanted to put up as collateral, were misrepresentations and alerted the FBI, which arrested the defendants at a staged loan closing. *Id.*. at 332-33. On appeal the defendants argued that the evidence against them was insufficient because, among other reasons, "Smith Barney is a sophisticated business, and no sophisticated business would be taken in by the defendants' preposterous misrepresentations." *Id.* at 333. The Seventh Circuit rejected the argument because "it is not a defense that the intended victim was too smart to be taken in." *Id.* Thus, even though arising in the context of sufficiency of the evidence, the Seventh Circuit made clear that evidence blaming the victim is irrelevant.

### 6. Motion to Admit Business Records

In its final motion in limine, the government asks the Court to find that records it intends to introduce at trial are admissible as business records under Federal Rules of Evidence 803(6) and 902(11), including records from "the Secretary of State, banks, credit unions, and currently exchanges, payment apps, phone companies, an electronic signature company, a rental car company, a medical clinic, a private jet company, a domain management service, computing companies, and an entertainment park." Govt. Motions in Limine [123] at 14.

The government provided a chart of the records and certifications from record keepers, but not the records themselves, *see* Dkt. 133. But Defendants are unopposed. The motion is granted.

### Mr. Carroll's Consolidated Motions in Limine [126] (Joined by Mr. Curry)

### 1. Motion to Bar Witnesses from Opining that Defendants Engaged in Conduct that was a "Fraud," "Scheme," "False," or "Fraudulent"

Defendants seek to bar any witness from testifying that Defendants engaged in a "scheme" or a "fraud," or that they made representations or promises that were "false" or "fraudulent." Defendants contend that those words go to the ultimate issue of whether they engaged in a scheme to defraud with the intent to defraud that involved materially false or fraudulent representations. Because that ultimate issue of guilt is for the jury to determine, not the witnesses, Defendants seek to bar such testimony under Federal Rule of Evidence 701(b).

The government is unopposed to the motion to the extent it seeks to bar testimony from witnesses drawing legal conclusions, which it agrees is inadmissible under Rule 701(b). However, the government argues that witnesses should be able to testify that information Defendants gave them turned out to be false or fraudulent, including why in the view of the witness the false information could not have simply been an error. The government's position finds support in *United States v. Eaden*, 37 F.4th 1307, 1313 (7th Cir. 2022), where the Seventh Circuit held that it has "repeatedly upheld a witness's use of the term 'fraudulent' when testifying in fraud cases" when used in the context of reports, representations, promises, rather than the ultimate issue of the defendant's intent. Accordingly, it concluded that a witness could describe submissions to a loan provider, or a home appraisal report, as having been fraudulent as opposed to accurate. *Id.*

Defendants' motion is granted in limited part as follows: witnesses are barred from testifying that Defendants engaged in a "scheme" or a "fraud" or had "fraudulent" intent, but may describe representations or promises Defendants made as having been false or fraudulent and their basis for concluding they were false or fraudulent.

### 2.   Motion to Bar Government Attorneys and Witnesses from Referring to "Victims"

Next, Defendants move to bar the government and its witnesses from referring to any individual as a "victim." They contend that the use of that word would be unduly prejudicial under Federal Rule of Evidence 403, and under Federal Rule of Evidence 701 it is for jurors to decide whether the individuals were victims of any fraudulent conduct by Mr. Carroll. In support he relies in *United States v. Franzone*, No. 21 CR 446, 2025 U.S. Dist. LEXIS 69258, at *7 (S.D.N.Y. Apr. 11, 2025), for the proposition that courts preclude referring to individuals as "victims" where the defense is that no crime occurred.

The government opposes the motion. It notes that in *Franzone*, the court actually allowed the government to use the word "victim," because the defense was not that the defendant did not engage in the alleged conduct, but rather that the defendant's conduct did not amount to a crime. *Id.* at *9.

Some courts allow use of the word "victim," while others bar it. *Compare United States v. Pumpkin Seed*, No. 07 CR 50062, 2008 U.S. Dist. LEXIS 140754, at *2 (D.S.D. Feb. 22, 2008) ("jurors understand that the Government's position is that a crime in fact occurred, and that the Government's references to 'rape' or to 'victim' are merely restatements of this party's position in the adversarial contest.") *with United States v. Sena*, No. 19 CR 1432, 2021 U.S. Dist. LEXIS 170971, at *4 (D.N.M. Sept. 9, 2021) ("to label Mr. Barros as a victim at the outset of trial carries the risk of improperly influencing the jury's decision. Moreover, there is virtually no probative value in allowing the government to use the term 'victim.'"). The Court finds *Pumpkin Seed* the more persuasive authority. Jurors are smart,[2] and the Court trusts them to follow their instructions, including that Defendants are presumed innocent and their guilt must be proved beyond a reasonable doubt, of which the Court will remind them repeatedly. Thus, jurors will understand that the government's use of "victims" is merely restating the government's position that a crime occurred. After balancing the relevant concerns including under Rule 403, and in an exercise of its discretion, the Court denies Defendants' motion to bar the government's use of the word "victim."

### 3.   Motion to Bar Government from Introducing Evidence of Loss

Finally, Defendants seek an order barring the government from introducing evidence of the personal or financial impact of Defendants' conduct on the alleged "victims" (Defendants' word, not the Court's). Carroll Motions in Limine [126] at 5. The government is mostly unopposed, except that it asks to leave open its ability to present evidence of the impact on the victims that tends to show Defendants intentionally engaged in fraud. Even Defendants in their motion acknowledge that such evidence would be admissible, offering as an example any evidence that "the defendant knew of the impact and yet continued to repeat the actions that caused the impact." *Id. See also United State v. Copple*, 24 F.3d 535, 545 (7th Cir. 1994) ("Also relevant is the defendant's failure to take any steps to ameliorate the loss.").

---

[2] *See White Buffalo Environmental, Inc. v. Hungry Horse, LLC*, No. 21 CV 175, 2023 U.S. Dist. LEXIS 48355, at *22, n.8 (D.N.M. Mar. 22, 2023).

Defendant's motion to bar evidence of loss is granted except that the government may introduce evidence of loss relevant to intent to defraud, one example being that Defendants knew their conduct was causing the alleged victims' losses but continued engaging in the conduct.

### Mr. Curry's Motion in Limine to Allow Counsel to Participate in *Voir Dire* [129]

Turning now to the motions in limine Mr. Curry filed, in this motion he moves to allow his counsel to participate in *voir dire*. The government is unopposed. The Court routinely allows counsel to participate in *voir dire* by asking follow-up questions after the Court has first questioned the potential jurors, the details of which it will discuss with counsel during the final pretrial conference.

The motion [129] is granted.

### Mr. Curry's Motion in Limine for an Instruction Defining Reasonable Doubt [130]

Mr. Curry moves for a jury instruction defining reasonable doubt, specifically the Third Circuit's Model Criminal Jury Instruction 3.06. But as Mr. Curry acknowledges, Seventh Circuit precedent forecloses such an instruction. *See United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993). The government opposes Mr. Curry's request.

Because an instruction defining reasonable doubt is foreclosed by *Blackburn*, the motion [130] is denied and the issue is preserved for appeal.

### Mr. Curry's Motion in Limine to Disclose Juror Questionnaires and Lists [131]

Finally Mr. Curry moves for "disclosure of the petit juror questionnaires and lists," which he acknowledges are generally not made available per Local Rule 47. The government is unopposed. But it is not clear to the Court what Mr. Curry seeks to be released. Local Rule 47 concerns "qualification forms" jurors complete, which the Court may order be released only "in connection with the preparation or presentation of a motion challenging compliance with selection procedures pursuant to 28 U.S.C. § 1987." Mr. Curry's motion in limine raises no such challenge. At the final pretrial conference the Court will discuss with counsel the questionnaire it prepares and gives to jurors the morning they start service, the answers to which the Court shares with counsel before beginning jury selection.

Mr. Curry's motion [131] is denied.

### CONCLUSION

For all of these reasons, the Court resolves the parties' motions as follows: Mr. Curry's motions to join [132] and [142] are granted, the government's consolidated motions in limine [123] are granted in part and denied in part as described in this order, the government's motion to admit Rule 404(b) evidence [124] is granted in limited part as described in this order, the government's motion to admit out-of-court statements under *Santiago* [125] is granted, Mr. Carroll's consolidated motions in limine [126] are granted as limited, and Mr. Curry's motions in

- 9 -

limine allowing counsel to participate in *voir dire* [129] is granted, but his remaining motions in limine [130] and [131] are denied.

Date: March 31, 2026          By: _____
                                   Iain D. Johnston
                                   United States District Judge